## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF NORTH CAROLINA
## CHARLOTTE DIVISION
## CIVIL ACTION NO. 3:16-cv-00068-GCM

| | | |
|---|---|---|
| **JAMES NORMAN RICHARDSON**, | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **ORDER** |
| | ) | |
| **PCS PHOSPHATE COMPANY, INC.** | ) | |
| **(formerly known as AQUITANE,** | ) | |
| **formerly known as TEXAS GULF) and** | ) | |
| **BROADSPIRE SERVICES, INC.** | ) | |
| | ) | |
| **Defendants.** | ) | |
| | ) | |

**THIS MATTER** is before the Court on Defendants PCS Phosphate Company Inc.'s

("PCS") and Broadspire Services, Inc.'s ("Broadspire") Motions to Dismiss pursuant to Fed. R.

Civ. P. 12(b)(1) and 12(b)(6) (Doc. Nos. 13 and 16). For the reasons set forth below, Defendants'

Motions to Dismiss are granted in part and denied in part.

## I. BACKGROUND

Plaintiff James Norman Richardson ("Richardson") was an employee of PCS between

1968 and 1995. (Doc. No. 1, ¶ 8). Richardson was exposed to asbestos during his employment

and filed a workers' compensation claim in 2009 against PCS alleging asbestos related medical

conditions including mesothelioma and cancer. (*Id.* at ¶ 9-10). During the course of Plaintiff's

employment with PCS, several companies carried workers' compensation insurance coverage for

PCS. Broadspire has been the third-party administrator for PCS since January of 1994. On

February 16, 2012 the North Carolina Industrial Commission ("NCIC") filed an Opinion and

Award concluding that Richardson's mesothelioma resulted from causes and conditions of his

employment with PCS. On May 21, 2013 the North Carolina Court of Appeals reversed the Opinion and Award and remanded the matter back to the NCIC. *Richardson v. PCS Phosphate Co.,* 744 S.E.2d 497 (N.C. Ct. App. 2013) (unpublished opinion). On February 12, 2014 the NCIC entered an Amended Opinion and Award concluding that Defendants PCS and Broadspire were liable for Richardson's disability benefits and ongoing medical expenses. (Doc. No. 1 at ¶ 14). On December 16, 2014 the North Carolina Court of Appeals affirmed the NCIC's Amended Opinion and Award. *Richardson v. PCS Phosphate Co.*, 768 S.E.2d 64 (N.C. Ct. App. 2014) (unpublished opinion). Defendants filed a Petition for Discretionary Review with the North Carolina Supreme Court on January 20, 2015, which was denied on August 20, 2015.

Richardson had been a Medicare beneficiary, and both Medicare and Richardson's supplemental insurance plan had been paying for the medical treatment of his asbestos-related conditions. On January 28, 2016 Defendants requested an update on the payment calculation and the amount owed to Medicare from the Centers for Medicare and Medicaid Services ("CMS"). CMS issued its Payment Demand Letter in response to Defendants' request on March 3, 2016, and payment was proffered by Broadspire to the CMS on or before March 15, 2016.

Richardson initiated this Complaint on February 9, 2016, alleging that Defendants have not promptly paid for the medical treatment of asbestos-related conditions through Richardson's workers' compensation claim, including the treatment paid for by Medicare and Richardson's Medicare supplemental insurance plan. (Doc. No. 1 at ¶ 18) Richardson's Complaint alleges: (1) Medicare Private Right of Action under 42 U.S.C. §1395y(b)(3)(a); (2) breach of contract; (3) unfair and deceptive trade practices; and (4) unjust enrichment. Defendants move to dismiss the Complaint for lack of subject matter jurisdiction and failure to state a claim.

## II. DISCUSSION

### A. Subject Matter Jurisdiction

Federal Rule of Civil Procedure 12(b)(1) provides that a case must be dismissed in the absence of subject matter jurisdiction. The plaintiff bears the burden of proving that subject matter jurisdiction exists. *Davis v. Tyson Foods*, No. 3:14-CV-00720-GCM, 2015 WL 4638301, at *1 (W.D.N.C. Aug. 4, 2015). The district court should grant a Rule 12(b)(1) motion to dismiss "only if the material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law." *Evans v. B.F. Perkins Co., a Div. of Standex Int'l Corp.*, 166 F.3d 642, 647 (4th Cir. 1999).

Defendants argue that this Court lacks subject matter jurisdiction because the North Carolina Workers Compensation Act provides the exclusive remedy for actions arising from the processing and handling of a workers' compensation claim. *See Bowden v. Young*, 768 S.E.2d 622, 625 (N.C. Ct. App. 2015). While Defendants are generally correct that ancillary state law causes of action such as breach of contract, unfair and deceptive trade practices and unjust enrichment relating to a workers' compensation claim are within the exclusive jurisdiction of the NCIC, this case presents a different issue.

In addition to his state law causes of action, Plaintiff has sued Defendants under the Medicare Secondary Payer Act ("MSP"), 42 U.S.C. § 1395y(b)(2). The MSP is designed to "reduce Medicare costs by making the government a secondary provider of medical insurance coverage when a Medicare recipient has other sources of primary insurance coverage." *Brown v. Thompson*, 374 F.3d 253, 257 (4th Cir. 2004) (quoting *Thompson v. Goetzmann*, 337 F.3d 489, 495 (5th Cir. 2003)). Medicare makes secondary payments only when "primary plans" are responsible to pay medical expenses, but do not do so "promptly." *See* 42 U.S.C.

§1395y(b)(2)(i); 42 C.F.R. § 411.21. All Medicare payments are conditioned on repayment by the primary plans. *See* 42 U.S.C. § 1395y(b)(2)(B)(i)-(ii). In addition to governmental enforcement, the MSP provides for a private right of action on the part of a beneficiary where a primary payer fails to comply with the statute. *See* 42 U.S.C. § 1395y(b)(3)(A). A plaintiff instituting a private right of action may recover double damages. *Id.*

This Court has federal question jurisdiction over Richardson's MSP claim under 28 U.S.C. § 1331. It is well established that federal courts have a "virtually unflagging obligation . . . to exercise the jurisdiction given them." *Chase Brexton Health Services, Inc. v. Maryland*, 411 F.3d 457, 462 (4th Cir. 2005) (quoting *Colorado River Water Conservation District v. United States*, 424 U.S. 800, 817 (1976)). "Federal courts 'have no more right to decline the exercise of jurisdiction which is given, than to usurp that which is not.'" *Id.* (quoting *Cohens v. Virginia*, 19 U.S. (6 Wheat.) 264, 404 (1821)). Accordingly, this Court cannot cede jurisdiction over this claim to the NCIC.

Likewise, the Court has supplemental jurisdiction over the related state law claims asserted by the Plaintiff. *See* 28 U.S.C. § 1367(a) (providing for the court's supplemental jurisdiction for claims associated with federal questions). The Court may decline to exercise its supplemental jurisdiction only if:

> (1) the claim raises a novel or complex issue of State law,
> (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,
> (3) the district court has dismissed all claims over which it has original jurisdiction, or
> (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

28 U.S.C. § 1367(c). It appears to the Court that none of these conditions are present herein.

Defendant PCS also argues that Plaintiff lacks standing to assert his claims because he has not alleged a legally cognizable injury. To have standing, a plaintiff must show: (1) an injury in fact; (2) a causal connection between his injury and the defendants' conduct; and (3) that his injury will likely be redressed by a decision in his favor. *White Tail Park, Inc. v. Stroube*, 413 F.3d 451, 458 (4th Cir. 2005).

The same standing argument was made and rejected by the court in *O'Connor v. Mayor and City Council of Baltimore,* 494 F.Supp.2d 372 (D.Md. 2007). In that case, the Maryland Workers' Compensation Commission found that plaintiff O'Connor's mesothelioma resulted from his employment with the defendant City and ordered the City to pay all of his related medical bills. 494 F.Supp.2d at 373. The City failed to pay and Medicare ended up paying the cost attributable to O'Connor's condition. *Id.* O'Connor sued pursuant to the MSP statute attempting to recoup these medical expenses. *Id.* In response to the City's argument that the plaintiff lacked standing, the court stated:

> [The Plaintiff] has alleged an injury in fact. In particular, the Complaint avers that the MSP statute renders the City responsible as a primary payer for O'Connor's medical expenses and that its refusal to fulfill this obligation has forced Medicare to make all mesothelioma-related payments on O'Connor's behalf. These general allegations of injury suffice at the early state of litigation. Moreover, the MSP statute's citizen suit provision exists to redress exactly this type of injury. Consequently, O'Connor has standing to pursue his claims.

*Id.* at 374.

*See also Woods v. Empire Health Choice, Inc*., 574 F.3d 92, 98 (2nd Cir. 2009) (stating that the MSP provision allows a Medicare beneficiary "to bring the suit in the party's own name to remedy the wrong done to it—namely the failure of a primary plan to make the payments required of it on behalf of the private party bringing the suit"). The Court

finds that Richardson has alleged a plausible injury in fact such that he has standing to pursue this claim.

PCS next asserts that Plaintiff's claim was premature and not ripe for adjudication at the time he filed his Complaint because PCS and Broadspire's responsibility for reimbursement had not yet accrued. Plaintiff's claims are premised on the theory that PCS and/or Broadspire failed to promptly reimburse Medicare for the conditional payments made for Plaintiff's medical treatment. (D.E. 1 at ¶¶18-19.) As explained above, the MSP requires a primary insurance provider to reimburse Medicare for any conditional payments made on behalf of a Medicare beneficiary "if it is demonstrated such primary plan has or had a responsibility to make payment with respect to such item or service." 42 U.S.C. § 1395y(b)(2)(B)(ii). The MSP statute specifies that the primary plan has 60 days from "notice of, or information related to," the primary plan's responsibility for making such payment. *Id.* Moreover, "[a] primary plan's responsibility for such payment may be demonstrated by a judgment, a payment conditioned upon the recipient's compromise, waiver, or release (whether or not there is a determination or admission of liability) of payment for items or services included in a claim against the primary plan or the primary plan's insured, or by other means." *Id.* Thus, demonstrated responsibility is a condition precedent to a private right of action under the MSP. *See Bio–Medical Applications of Ga., Inc. v. City of Dalton, Ga.*, 685 F. Supp. 2d 1321, 1331 (N.D. Ga. 2009) (finding that "the 'weight of the authority' holds that the MSP Act requires a primary plan to have a demonstrated obligation to pay before a private cause of action may arise"); *Fresenius Med. Care Holdings, Inc. v. Brooks Food Grp., Inc.*, 3:07CV14-H, 2007 WL 2480251, at *7 (W.D.N.C. Aug. 28, 2007) (the MSP "makes it a

condition precedent to reimbursement that there be a 'demonstrated responsibility' to pay for items or services" and "to hold otherwise would open a primary insurer to double damages each time it contests a claim, rather than only when it fails to pay *after* responsibility has been established.")

Defendants assert that they were engaged in the process of determining the extent of their responsibility under the MSP when Plaintiff filed this lawsuit. They argue that Plaintiff's claim was not ripe because their responsibility "had not yet been determined or demonstrated by a notice from CMS, much less a response from CMS regarding the proper conditional payment calculation." (Doc. No. 14, p. 14). Furthermore, as soon as CMS responded with the accurate accounting of the conditional payments made on Plaintiff's behalf, Broadspire promptly paid the demand in full well within the applicable timeframe.

It appears to the Court at this point in the litigation that there are factual issues as to when the "demonstrated responsibility" arose, and whether the obligation was in fact paid in full. Accordingly, at this point, the Court cannot conclude that this action is moot.

## B. Failure to State a Claim

PCS seeks to dismiss Plaintiff's state law claims for failure to state a claim upon which relief can be granted pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. When faced with a motion to dismiss under Rule 12(b)(6), the Court must "accept as true all well-pleaded allegations and . . . view the complaint in a light most favorable to the plaintiff." *Mylan Labs, Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993). The Court "assume[s] the[] veracity" of these factual allegations, and "determine[s] whether they plausibly give rise to an entitlement to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). Thus, a "complaint may proceed even if it

strikes a savvy judge that actual proof of [the facts alleged] is improbable, and that a recovery is very remote and unlikely." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007) (internal quotation marks and citation omitted). However, the Court "need not accept as true unwarranted inferences, unreasonable conclusions, or arguments." *Eastern Shore Mkts., Inc. v. J.D. Assocs. LLP*, 213 F.3d 175, 180 (4th Cir. 2000).

PCS first contends that that Plaintiff has failed to sufficiently plead a breach of contract. When a plaintiff alleges a breach of contract claim based on a third-party beneficiary contract doctrine, the complaint must allege: "(1) the existence of a contract between two other persons; (2) that the contract was valid and enforceable; and (3) that the contract was entered into for [the plaintiff's] direct, and not incidental, benefit." *Hardin v. York Memorial Park*, 730 S.E.2d 768, 775 (N.C. Ct. App. 2012).

Plaintiff's breach of contract claim alleges the existence of a valid workers' compensation insurance or administration contract between PCS and Broadspire and that the Defendants breached their promise to Plaintiff to pay for his asbestos-related medical treatment promptly under the North Carolina workers' compensation system. (Doc. No. 1, ¶¶ 26-29). PCS asserts that Plaintiff fails to allege with specificity that the underlying contract was entered into for his "direct, and not incidental, benefit." However, the language of the North Carolina Workers' Compensation Act establishes both (1) PCS Phosphate's duty to pay promptly and (2) Mr. Richardson's standing to sue as a third-party beneficiary to the workers' compensation insurance contract:

> No policy of insurance against liability arising under this Article [the Workers' Compensation Act] shall be issued unless it contains the agreement of the insurer that *it will promptly pay* to the person entitled to same *all benefits conferred by this Article*, and all installments of compensation that may be awarded…. *Such agreement shall be construed to be a direct promise by the insurer to the person entitled to compensation enforceable in his name.*

N.C. Gen. Stat. § 97-98. (emphasis added)  The Workers' Compensation Act "deems" these terms to be a part of every workers' compensation insurance contract.  *See* N.C. Gen. Stat. § 97-99.  Plaintiff plausibly alleges that PCS broke the "direct promise" that N.C. Gen. Stat. § 97-98 guaranteed to Richardson for "prompt" payment of his medical expenses.  Accordingly, Plaintiff's breach of contract claim survives Defendant's Rule 12(b)(6) challenge.

Defendant PCS next argues that Plaintiff's unfair and deceptive trade practices claim must be dismissed because it is related to his employment relationship with PCS, and because he has failed to sufficiently plead the claim.   To state a claim under the North Carolina Unfair and Deceptive Trade Practices Act ("UDTPA"), a claimant must allege (1) an unfair and deceptive act or practice (2) in or affecting commerce (3) which proximately caused injury to the plaintiff or his business.  *See* N.C. Gen. Stat. § 75-1.1; *Walker v. Fleetwood Homes of N.C., Inc*., 653 S.E.2d 393, 399 (N.C. 2007).

While the UDTPA generally does not apply to employee-employer relationships, it "does not bar suits between employer and employee if the offending conduct occurred before or after the employment relationship's existence."  *Mayes v. Moore*, 419 F. Supp. 2d 775, 784 (M.D.N.C. 2006).  Here, the conduct complained of occurred after the employment relationship ended.

PCS also argues that an UDTPA claim cannot "piggyback" on a breach of contract claim. In the Complaint, however, the UDPA claim does not piggyback Plaintiff's breach of contract claim.  Instead, it piggybacks the MSP cause of action. The breach of contract cause of action appears between paragraphs 25 and 31 of the Complaint. (Document 1 pp. 5-6.) On the other hand, the UDPA cause of action reincorporates only paragraphs 1 through 24—the MSP cause of action—and it does not reincorporate paragraphs 25 through 31.  (Document 1 pp. 6-7.)

Lastly, PCS asserts that Plaintiff has failed to plausibly allege that he suffered actual, independent damages as a result of PCS and Broadspire's alleged unfair and deceptive trade practices. Instead, Plaintiff specifically pleads alleged harm to the federal Medicare program and the medical providers who cared for the Plaintiff. A review of the Complaint reveals that Plaintiff has alleged that Defendants' failure to pay for his asbestos-related medical care has "directly and proximately caused: a. Mr. Richardson to incur co-pays, deductibles, and other out-of-pocket exposures through the Medicare system and his supplemental insurance plan, which Mr. Richardson would not have had under the comprehensive coverage provided by the North Carolina workers' compensation system." (Doc. No. 1, ¶ 24). At this stage of the litigation, the Court finds these allegations to be sufficient to state a plausible claim for UDTPA.

Plaintiff's Fourth Cause of Action alleges a claim for unjust enrichment. "In order to prevail on a claim for unjust enrichment, a plaintiff must prove that (1) it conferred a benefit on the defendant, (2) the benefit was not conferred officiously or gratuitously, (3) the benefit is measurable, and (4) the defendant consciously accepted the benefit." *McManus v. GMRI, Inc.*, 2012 WL 2577420, at *10 (W.D.N.C. 2012) (quoting *Metric Constructors, Inc. v. Bank of Tokyo-Mitsubishi, Ltd.*, 72 Fed. Appx. 916, 920, 2003 WL at * 3 (4th Cir. 2003)). Under North Carolina law, "[a]n unjust enrichment claim is *available only in the absence of an express contract* between the parties." *Id.* (emphasis in original)

Defendant contends that because Plaintiff has asserted a breach of contract claim, he may not sue for unjust enrichment. Plaintiff's claim for unjust enrichment expressly incorporates by reference all of the allegations alleging the existence of an express contract. (Doc. No. 1, ¶ 37). Accordingly, Plaintiff's claim for unjust enrichment must be dismissed. *See McManus,* 2012 WL 2577420, at *10.

IT IS THEREFORE ORDERED that Defendants' Motions to Dismiss are GRANTED IN PART AND DENIED IN PART, and Plaintiff's claim for Unjust Enrichment is hereby dismissed with prejudice.

Signed: September 9, 2016

Graham C. Mullen
United States District Judge